IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
|     Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-04-604 (2) |
| | § | C.A. No. C-06-172 |
| LUPITA GONZALES, | § | |
| | § | |
|     Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DISMISSING
MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE,
AND DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Lupita Gonzales' ("Gonzales") motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255 (D.E. 45),[1] which was received by the Clerk on April 17, 2006. The Court ordered the government to respond, and the government filed an answer and motion to dismiss. (D.E. 48, 49). Gonzales filed a reply on July 24, 2006. As discussed in detail herein, some of Gonzales' claims are subject to dismissal because she waived her right to file those claims. The remaining claims, which fall outside the scope of her waiver, fail on their merits. For these reasons, discussed in more detail below, the Court DENIES her § 2255 motion. Additionally, the Court DENIES Gonzales a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1] Dockets entries refer to the criminal case, C-04-cr-604.

1

## II.  FACTS AND PROCEEDINGS

On October 27, 2004, Gonzales was charged in a two-count indictment with knowingly and intentionally possessing with intent to distribute approximately 16 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) ("Count One"); and knowingly and intentionally conspiring to possess with intent to distribute approximately 16 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 ("Count Two"). (D.E. 1).  On September 1, 2005, Gonzales pleaded guilty pursuant to a written plea agreement.  (Docket Entry dated September 1, 2005; D.E. 24).  In exchange for her guilty plea to the possession count, i.e., Count One, and her waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that she receive the maximum credit for acceptance of responsibility, to recommend a sentence at the lowest end of the applicable guideline range, and to move for the dismissal of the conspiracy count, i.e., Count Two, at sentencing. (D.E. 24).

The plea agreement contained a voluntary waiver of Gonzales' right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 USC. [sic] § 3742 affords a defendant the right to appeal the sentence imposed.  The defendant waives the right to appeal the sentence imposed or the manner in which it was determined.  The defendant may appeal <u>only</u> (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 USC § 3742(b).  Additionally, the defendant is aware that Title 28, USC § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.  The defendant waives

>   the right to contest his/her conviction or sentence by means of
>   any post-conviction proceeding.

(D.E. 24 at ¶ 7) (emphasis in original).

The Court questioned Gonzales under oath at the rearraignment to ensure that her plea was voluntary and knowing and to ensure that she understood and was voluntarily relinquishing her appeal rights and right to file a § 2255 motion. The AUSA explained the basic terms of the plea agreement, including the waiver of appellate rights and § 2255 rights. (D.E. 51, Rearraignment Transcript ("R. Tr.") at 10-11). Immediately thereafter, the Court asked Gonzales whether that was her agreement. She testified that it was. (R. Tr. at 11). She further testified that she read it and discussed it with her attorney and that it was correctly written. (Id.). The Court specifically questioned Gonzales regarding her appellate waiver and her waiver of the right to file a § 2255 motion:

>   THE COURT: By that agreement you are also giving up important rights that you have to appeal my sentencing decision as well as to file any petition later to attack your conviction or your sentence after they become final. Are you aware that you are giving up those rights?
>
>   THE DEFENDANT: Yes, Your Honor.
>
>   THE COURT: Do you want to give up those rights?
>
>   THE DEFENDANT: Yes, Your Honor.
>
>   THE COURT: Have you discussed those matters of giving up your right of appeal as well as the right to collaterally attack your sentence and conviction, do you want to give up those rights?
>
>   THE DEFENDANT: Yes, Your Honor.

3

(R. Tr. at 12).  It is clear from the foregoing that Gonzales' waiver of her § 2255 rights was knowing and voluntary.  See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court sentenced Gonzales on November 22, 2005.  She received the benefit of the safety valve, and her applicable guideline range was 87 to 108 months.  (D.E .50, Sentencing Transcript ("S. Tr.") at 2-3).  Gonzales' counsel agreed that the guideline range was correct, but asked for a downward departure based on her "good-faith attempt" to provide 5K1 assistance.  (S. Tr. at 3).  Apparently, Gonzales debriefed, and was willing to testify against her co-defendant Sandra Garcia, but the government decided not to prosecute Garcia and dismissed the case against her.  (S. Tr. at 3-4).  According to the government, however, it was unable to use Gonzales' testimony because the first time she spoke to agents, she told them that Garcia was not involved in the offense.  (S. Tr. at 4-5). Essentially, then, her initial exoneration of Garcia obstructed the government's ability to prosecute Garcia. (S. Tr. at 5).  In denying the motion for downward departure, the Court noted that Gonzales was unable to take advantage of a substantial assistance departure because "of her own misdeeds."  (S. Tr. at 5-6).

The Court sentenced Gonzales to 87 months in the custody of the Bureau of Prisons, to be followed by a four-year term of supervised release, and imposed a $100 special assessment. (S. Tr. at 5; D.E. 40, 41).  Judgment of conviction and sentence was entered

November 29, 2005. (D.E. 41). On December 1, 2005, Gonzales filed a *pro se* letter motion to the Court, in which she asked for a lower sentence. (D.E. 43). The letter motion was docketed as a motion to reconsider her sentence, and the Court denied the motion in an order entered December 9, 2005. (D.E. 44).

Consistent with her waiver of appellate rights, Gonzales did not appeal. Gonzales' § 2255 motion was received by the Clerk on April 17, 2006. (D.E. 45). It is timely.

### III. MOVANT'S ALLEGATIONS

In her motion, Gonzales lists four grounds for relief, although some of those grounds contain more than one claim. In her first ground, she asserts a claim of ineffective assistance of counsel. Her primary claim appears to be that her counsel was ineffective because he failed to secure a written promise from the government to file a Rule 35 motion for reduction of her sentence. (D.E. 45, Supp. Mem. at pp. 1-3 of Section titled "Ground I"). She also makes additional allegations concerning her counsel's alleged deficiencies, including ones that:

- counsel advised her to sign the plea agreement, but had never gone over the agreement with her, and then advised her to lie to the court by answering "yes" to the questions of the court at the rearraignment; and

- counsel was generally inconsistent and failed to subject the prosecution to a meaningful "adversarial challenge" because he failed to secure a reduction in her sentence due to her cooperation.

Based on the foregoing, she concludes that due to her counsel's omissions, she did not make a knowing and intelligent decision concerning all the elements of her plea agreement.

5

Her second claim appears to be a direct claim that her plea agreement was not knowing, intelligent or voluntary, because she did not have time to read it, and because counsel did not provide her with necessary advice concerning the plea. She then includes a passing reference to the government's "breach of the plea agreement," but never explains how or why the government breached the agreement.[2] She claims to have had no knowledge at the time of her plea that the government would not file a motion for downward departure. She then claims that evidence of her signature on the plea agreement is "barred by the rules" because she signed it during the rearraignment itself. She claims that she "would have never waived her rights of Constitutional protections knowingly." (D.E. 45, Supp. Mem. at p. 3 of Section titled "Ground II").

Gonzales titles her third claim as one that she was convicted by a jury which was unconstitutionally selected and impaneled. In reviewing her claim, however, it appears that she is claiming that this Court was without jurisdiction to indict her, and that the current federal courts are not ordained and established Article III courts. (D.E. 45, Supp. Mem. at Section titled "Ground III").

Gonzales' fourth claim is that her "conviction" was obtained by a violation of her privilege against self-incrimination. Again, she argues that she assisted the government and provided them with information that incriminated herself only because of the government's promise to file a motion under Rule 35.

---

[2] Based on the totality of the motion, the Court can only speculate that she believes that the government's failure to move for a downward departure for substantial assistance was a breach of the agreement.

6

For the reasons set forth herein, Gonzales' claims fail.

## IV.  DISCUSSION

A.     28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his or her sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Gonzales has procedurally defaulted her claims by failing to appeal.  Rather, the Court concludes that she waived most of the claims in her motion and thus does not reach the merits of those claims.  See infra Section IV.C.; United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights).

Several of her allegations and claims, however, fall outside the scope of her § 2255 waiver, because they are a direct challenge to the validity of the plea and, thus, the waiver. See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective

7

assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"); Cf. United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering defendant's argument that United States breached the plea agreement, despite an appeal-waiver provision in the plea agreement). These include her claims that:

1. the government breached its plea agreement with her by failing to file a motion for downward departure;

2. her counsel was ineffective for failing to obtain in writing the government's promise to file a motion for downward departure; and

3. her plea was unknowing and involuntary because she signed it only because she believed she was going to get a motion for downward departure.

Thus, the Court will address this group of claims first.

Prior to doing so, however, the Court notes that all of Gonzales' challenges to her plea agreement focus on the fact that she was not given a downward departure, and that the government never moved for one. Notably, however, the fact that she did not receive a motion for downward departure is the result of her own actions. That is, when she first talked to agents, Gonzales exculpated Garcia, the passenger in the vehicle with her, telling the agents that the passenger was uninvolved and knew nothing about the drugs. When Gonzales debriefed, she told a different version. The government stated at sentencing that it believed her second story from the debriefing, which implicated Garcia. Nonetheless, because of the conflict in the testimony (and the lack of other evidence linking the co-defendant to the crime), the government did not believe that it could successfully prosecute

Garcia. Accordingly, Gonzales was not given the opportunity to testify against that individual. As is plain from the foregoing, however, the reason that Gonzales was not given that opportunity was because she did not truthfully debrief when she first spoke to agents. Thus, as the Court noted at sentencing, it was her own misdeeds that caused her not to receive a downward departure motion. (S. Tr. at 3-6).

**B.     Challenges to Plea**

All three of Gonzales' claims challenging her plea fail based on her own testimony at the rearraignment. As discussed herein, Gonzales' testimony establishes that the government did not make her any promises outside the written plea agreement, including any promise that it would file for downward departure. Gonzalez' testimony also establishes that she pleaded guilty knowing that she was not assured of a downward departure.

**1.     Background Concerning Gonzales' Testimony at Rearraignment**

At the time that Gonzales pleaded guilty, the Court properly and fully assured itself that her plea was knowing and voluntary, as a trial judge is required to do. See James v. Cain, 56 F.3d 662, 666 (5th Cir. 1995); Taylor v. Whitley, 933 F.2d 325, 329 (5th Cir. 1991), cert. denied, 112 S. Ct. 1678 (1992) (defendant must have a full understanding of what the plea connotes and of its consequences). At her rearraignment, Gonzales testified in open court that she had received a copy of her indictment and had discussed it with her attorney. (R. Tr. at 3, 5). She testified that she had enough time to discuss her case with her attorney, that she was satisfied with his services, that her counsel had been a good

attorney for her, that he had made himself available to her for questions, and that he was following her instructions on the day of rearraignment. (R. Tr. at 5).

The Court informed Gonzales of the various trial rights available to her, and she testified that she understood that if she pleaded guilty, she would be giving up those trial rights. (R. Tr. at 5-7). She testified that she wanted to give up her right to a jury trial and her right of silence. (R. Tr. at 7). The Court informed Gonzales of the charge against her and Gonzales testified that she understood the charge. (R. Tr. at 7-8).

Consistent with Rule 11, Fed. R. Crim. P., the Court explained to Gonzales the maximum punishment that she might receive. Specifically, the Court informed her that she could be sentenced to a maximum of a lifetime in the penitentiary and that there was a mandatory minimum sentence of ten years. The Court also informed her that there was a maximum fine of four million dollars, a mandatory $100 special assessment, and a minimum supervised release term of five years. (R. Tr. at 8). Gonzales testified that she understood, and that she had discussed with her attorney how the sentencing guidelines might apply to her. (R. Tr. at 8-9).

Gonzales testified that no one had threatened her or forced her to plead guilty, that no one had promised her leniency for pleading guilty, and that it was her decision to plead guilty. (R. Tr. at 9-10). Gonzales' sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit

affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002).

Based on her testimony described above and the record in this case, each of her challenges to her plea or waiver fail.

### 2. Government Breach of Agreement

Her claim that the government breached its agreement is flatly contradicted by the record in this case. The written agreement Gonzales had with the government made plain that the government was obligated to make a motion for downward departure based on her cooperation only if, in its opinion, she had in fact given substantial assistance. (D.E. 24 at ¶ 3).

Additionally, in summarizing Gonzales' plea agreement at the rearraignment, the prosecuting AUSA indicated that the agreement contained a provision for Gonzales to take advantage of substantial assistance, if she decided to do so, but also stated that neither the government nor any law enforcement agency made any promises or representations as to what sentence would be imposed by the Court. (R. Tr. at 10).

Significantly, it is evident from the rearraignment transcript that Gonzales and her counsel were aware at the time of the rearraignment that the government had indicated that it did not intend to recommend a downward departure for substantial assistance. (R. Tr. at 17-18). Specifically, the following exchange occurred after the Court accepted her guilty plea:

11

> THE COURT: Counsel, does your client have any opportunity to help herself?
>
> MR. WOERNER: Your Honor, she has in fact made a full debriefing. It was, frankly, with the expectation that we would be receiving 5K. However, the Government decided that they didn't have enough evidence to charge the co-defendant, despite the co-defendant being implicated by my client, so right at this point in time Mr. Duke has indicated that he probably will not recommend 5K. I'm going to speak to Mr. Cusick about it because I feel their decision not to proceed against the co-defendant shouldn't affect their decision to recommend that she receive a substantial departure.
>
> THE COURT: Okay. Talk to me about it at sentencing. If you don't receive any relief, we'll find out what's gone on.
>
> MR. WOERNER: Yes, Your Honor.

(R. Tr. at 17-18).

Gonzales therefore has not shown that the government made any promise to move for downward departure, or that it breached any such promise. Her claim on this ground fails.

### 3.  **Ineffective Assistance of Counsel**

Gonzales' ineffective assistance claim concerning her plea is similarly infirm. An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable

assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

As noted, Gonzales claims that she received ineffective assistance as to her plea because her attorney did not obtain a written promise from the government that it would move for a downward departure based on her cooperation. As an initial matter, the Court notes that there is nothing in the record to suggest that a written promise by the government to move for a downward departure was ever available or offered to Gonzales or that the United States would have made such a promise, had her counsel sought it. Instead, the typical plea agreement clause on substantial assistance used by the United States Attorney in this district was included in the agreement. That clause gives "sole discretion" to the United States as to whether to file a motion. (D.E. 24 at ¶ 3). In short, her attorney was not deficient for failing to obtain a concession where there is no evidence that the United States would have ever given such a concession.

Gonzales also has failed to show prejudice because she cannot show that, absent her counsel's alleged errors, she would not have pleaded guilty. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective

assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Gonzales' own testimony, however, shows that she was willing to plead guilty even without a firm promise from the government regarding a motion for downward departure. Thus, her ineffective assistance claim fails.

### 4.   Unknowing and Involuntary Guilty Plea

As set forth in Section B.1, above, Gonzales' claim that she pleaded guilty only because she believed the government was going to move for a downward departure is flatly denied by the record.

As discussed supra at pages 11-12, the government had informed Gonzales and her counsel prior to rearraignment that it did not intend to move for a downward departure. Thus, Gonzales knew that the government was taking the position that it would not move for a downward departure based on substantial assistance, yet she chose to plead guilty anyway. This wholly undermines her claim that she pleaded guilty only because she believed she would be receiving a downward departure motion.

Moreover, as noted previously, Gonzales testified under oath that no one had made her any promises other than what was in the plea agreement. (R. Tr. at 9, 12-13). She also understood that it was only the Court who could determine her sentence. (R. Tr. at 11-13).

All of these facts, especially when taken together, show that Gonzales' challenge to the knowing and voluntary nature of her plea fails. Because the Court concludes that

Gonzales' challenges to the plea agreement fail, her waiver of § 2255 rights contained in her plea agreement is valid and enforceable. The effect of the waiver is discussed more fully in the subsequent section.

**C.     Waiver of § 2255 Rights**

It is clear from the rearraignment that Gonzales understood that she was waiving her right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for her waiver to be enforceable. See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Again, Gonzales' statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; United States v. Cothran, 302 F.3d at 283-84. Those statements support a finding that her wavier was knowing and voluntary.

In sum, Gonzales' allegations that the government breached the plea agreement, that her counsel was ineffective with regard to her plea, and that her plea was not knowing and voluntary all fail on their merits. The Court thus concludes that Gonzales' waiver of her right to file a § 2255 motion is valid and enforceable, and her remaining claims fall within the scope of her waiver. Those remaining claims, therefore, are not properly before the Court. See generally Wilkes, supra; White, supra. For these reasons, her § 2255 motion is DENIED in its entirety.

**D.     Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."

28 U.S.C. § 2253(c)(1)(A). Although Gonzales has not yet filed a notice of appeal, this Court nonetheless addresses whether she would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

The Court concludes that reasonable jurists could not debate the denial of Gonzales' § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Similarly, as to the claims that this Court has addressed on procedural grounds, the Court finds that Gonzales cannot establish at least one of the Slack criteria. Specifically, jurists of reasons would not find debatable this Court's ruling that her waiver bars her remaining claims. Accordingly, Gonzales is not entitled to a COA as to any of her claims.

## V. CONCLUSION

For the above-stated reasons, Gonzales' motion under 28 U.S.C. § 2255 (D.E. 45) is DISMISSED WITH PREJUDICE. The Court also DENIES her a Certificate of Appealability.

Ordered this 14th day of December, 2006.

_____
HAYDEN HEAD
CHIEF JUDGE

17